UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

YOLANDA P.,[1]

         Plaintiff,

   v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

         Defendant.

Case. No. 6:19-cv-00721-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Yolanda P. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, that decision is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB on October 2, 2015, alleging disability beginning on July 9, 2013. Tr. 286-88. Her application was initially denied on January 4, 2016, and

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

upon reconsideration on March 15, 2016. Tr. 161-63, 167-69. On April 7, 2016, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"), which took place on May 3, 2018. Tr. 30-69. After receiving testimony from plaintiff, two medical experts, plaintiff's mother, and a vocational expert, ALJ R.J. Payne issued a decision on June 18, 2018, finding plaintiff not disabled within the meaning of the Act. Tr. 15-24. The Appeals Council denied a request for review on April 11, 2019. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity from her alleged onset date of July 9, 2013, through June 30, 2014, her date last insured. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe impairments: type one diabetes mellitus, degenerative disc disease, and chronic pain syndrome. *Id.* The ALJ recognized other impairments in the record, i.e., migraines and a seizure disorder, but concluded that both were non-severe. Tr. 18. The ALJ further found that although plaintiff complained of rheumatoid arthritis, the medical records did not contain such a diagnosis and concluded that it was not a medically determinable impairment. *Id.*

As to plaintiff's mental impairments, the ALJ recognized that plaintiff suffered from a depressive disorder, not otherwise specified, and a generalized anxiety disorder, but concluded that both were non-severe. *Id.* In making that finding, the ALJ considered the four broad areas of mental functioning, known as the "paragraph B" criteria, used to evaluate mental disorders. Tr. 18-19; 20 C.F.R. § 404, Subpt. P, App. 1, 12.00(C).

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 19. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform

sedentary work as defined in 20 C.F.R. § 416.967(a), with the following limitations: she can occasionally lift 10 pounds, frequently lift or carry less than 10 pounds, she could stand and/or walk two hours total in an eight-hour work day with normal breaks, she could sit without restriction, she could occasionally stoop, crouch, kneel, crawl, balance, and climb ramps and stairs, and she could never climb ladders and scaffolds or work around unprotected heights.  Tr. 19-20.

At step four, the ALJ found plaintiff was unable to perform any past relevant work through the date last insured.  Tr. 22.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy including final assembler, document sorter, and telephone sales clerk.  Tr. 23. Thus, the ALJ concluded plaintiff was not disabled at any time from the alleged onset date, July 9, 2013, through the date last insured, June 30, 2014.  Tr. 24.

## DISCUSSION

Plaintiff argues that the ALJ: (1) improperly discounted her subjective symptom testimony; (2) erroneously assessed the medical opinion evidence of examining psychologist, Dr. David Freed, and treating nurse practitioner, Maria Fife; and (3) failed to include all supported functional limitations in the RFC.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state

which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical record and other evidence in the record. Tr. 20. Plaintiff makes a number of arguments regarding how the ALJ erred, which the court

examines in turn.

### A. Failure to Follow a Prescribed Course of Treatment and Failure to Seek Treatment

Plaintiff takes issue with the fact that the ALJ discredited her subjective symptom testimony based on her failure to take two doses of insulin prior to an episode of diabetic ketoacidosis ("DKA").[2] Pl. Br. 12. Specifically, the ALJ found:

> While subsequent records showed evidence of uncontrolled diabetes into 2013, diabetic ketoacidosis did not again occur until December 2013. Notably, at that time, the claimant had missed 2 insulin doses, which strongly indicates that *such severity occurred due to lack of treatment, not in spite of it* (Exhibit B5F.12-13, 16, 23).

Tr. 20 (emphasis added).

In assessing a claimant's credibility, the ALJ may consider "unexplained or inadequately explained failure to seek treatment or failure to follow a prescribed course of treatment[.]" *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)) (internal quotation marks omitted). "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated[.]" *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007). However, "[w]here a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Contreras v. Saul*, No.

---

[2] "Diabetic Ketoacidosis (DKA)" is a "buildup of ketones in blood due to breakdown of stored fats for energy; a complication of diabetes mellitus. Untreated, can lead to coma and death." Stedman's Medical Dictionary 469690 (2014).

319CV00482GPCNLS, 2020 WL 1650594, at *12 (S.D. Cal. Apr. 3, 2020) (providing examples of "good reasons").

Contrary to the ALJ's finding, the record reflects that plaintiff's DKA was not caused by plaintiff's two missed insulin doses. Rather, the notes from plaintiff's December 2013 hospital stay state that plaintiff "missed 2 of her insulin doses due to nausea and vomiting [caused by her DKA]." Tr. 910. Put differently, plaintiff did not cause her DKA because she failed to take her medication; her DKA caused her to fail to take her medication. Thus, plaintiff's purported failure to take two doses of insulin was not a clear and convincing reason to reject her subjective symptom testimony.

The ALJ also mischaracterized the record regarding plaintiff's refusal of treatment. The ALJ found:

> [I]n December 2013, to prevent another episode of diabetic ketoacidosis, the claimant had an abscess drained. Notably, *the claimant refused prior emergent care treatment for the abscess*, but shortly following drainage, she disclosed her pain subsided significantly and blood sugar level improved immediately (Exhibit B3F.21).

Tr. 21 (emphasis added). However, the record reflects that plaintiff did not refuse treatment for her abscess. Rather, chart notes state that plaintiff "[r]ecently developed DKA subsequent to abscess in her axila. She *was refused tx* for [the abscess] in ER x 2 and did not have [appointment for treatment] with surgeon for 1 week so as emergency, we had to drain abscess here in office[.]" Tr. 412 (emphasis added); *see also* Tr. 416 ("Has presented to Salem ER 2 x for [abscess] but treated only for DKA and dehydration."). In fact, after having the abscess drained, plaintiff was given a letter "to take with her in future to ER to explain that if she has skin infection, it needs to be addressed because it is causing her severe high [hyperglycemia]." Tr. 414. Thus, the ALJ's finding that plaintiff refused

treatment was not based on substantial evidence and does not suffice as a clear and convincing reason to reject plaintiff's subjective symptom testimony.

### B.    Improved Condition

Plaintiff also takes issue with the fact that the ALJ discredited her subjective symptom testimony because her diabetic conditions improved.  Pl. Br. 13.  "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see e.g.*, *Sklyarenko v. Colvin*, No. 3:12-CV-02033-AA, 2014 WL 792155, at *6 (D. Or. Feb. 23, 2014) ("[T]he ALJ made specific findings regarding the effective treatment and management of plaintiff's asthma" when she "pointed to *several* signs of treatment for plaintiff's asthma, noting that evidence in the record shows that '[plaintiff's] asthma stabilized prior to April 28, 2009.'") (emphasis added).

The ALJ found:

[I]n the immediate month following the date last insured, a follow-up assessment in August 2014 indicated her diabetic condition was *controlled* (Exhibit B3F.14). Additionally, during a December 2014 follow-up, the claimant said her diabetic symptoms were chronic, but *fairly controlled* (Exhibit B3F.8).

Tr. 21 (emphasis added).

However, the chart note cited by the ALJ shows that plaintiff's condition was not, in fact, controlled.  Tr. 21, 399, 403-05.  The note indicates that plaintiff's A1C was 9.7% two days prior to her December 2014 visit.[3]  Tr. 399; *see also Ayer v. Ende*, No.

---

[3] The court may take judicial notice of information on government websites not subject to reasonable dispute.  Fed. R. Evid. 201; *Daniels–Hall v. National Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); *Siebert v. Gene Security Network, Inc.*, 75 F. Supp. 3d 1108, 1111 n. 2 (N.D. Cal. 2014). The court takes judicial notice of the fact that "[t]he A1C test is a blood test that provides information about a person's average levels of blood glucose . . . over the past three months." *The A1C Test & Diabetes,* U.S. Dept. of Health & Human Services,

CV1300482PHXDJHMHB, 2016 WL 8999385, at *4 (D. Ariz. Mar. 7, 2016) ("Plaintiff's HgB A1C was 8.6. . . . [I]t was noted during a chronic care visit that Plaintiff's degree of diabetic control was 'poor'[.]").  Moroever, directly below plaintiff's statement that her symptoms are "fairly controlled" is a note that her blood glucose ("BG") "ha[d] been spiking 200-250 above baseline at times. . . .  [S]he has brought her BG meter where we extracted the readings that indicates the highest approximately at 400 and some lows."[4]  Tr. 399.

Plaintiff's 9.7% A1C result—which appears to be plaintiff's lowest A1C in the record—does not demonstrate that her diabetes was under "control."  Plaintiff's more recent records continue to show a high A1C, e.g., Tr. 1327 (10% on November 3, 2017), and erratic BG levels, *e.g.*, Tr. 1137 (swings of blood glucose between 37-587mg reported on February 11, 2016), further demonstrating that her diabetes remains uncontrolled.[5]  *See also* Tr. 1166, 1173, 1210, 1215, 1261, 1354 (describing plaintiff's diabetes as "uncontrolled").

Where, as here, a "controlled" notation is on treatment records that also discuss blood sugar spikes and high A1C percentages, the ALJ mischaracterized the record.  Thus,

---

National Institutes of Health, http://diabetes.niddk.nih.gov/dm/pubs/A1CTest/# 1 (last visited August 2, 2020).

[4] The court also takes judicial notice, *see supra* n. 3, of the fact that people with diabetes have BG targets of 80 to 130 before a meal and below 180 two hours after the start of a meal.  *Know Your Blood Sugar Numbers*, U.S. Dept. of Health & Human Services, https://www.niddk.nih.gov/health-information/diabetes/overview/managing-diabetes/know-blood-sugar-numbers (last visited August 2, 2020).

[5] *See also* Tr. 515 (BG 321.6 mg on October 2, 2015); Tr. 1199 (erratic ranges of BG from nearly 50-400mg stated on November 8, 2016); Tr. 1253 (BG ranging from 44-500+ mg stated on January 31, 2018).

plaintiff's purported "controlled" diabetic condition was not a clear and convincing reason

to reject her subjective symptom testimony.

### C.   Neurological Impairments

The ALJ rejected plaintiff's testimony regarding hand numbness on the basis that

there was no evidence of neurological deficit other than plaintiff's subjective testimony.  Tr.

21.  The ALJ noted the following in support: (1) "[I]n spite of [chronic pain syndrome] and

her diabetic conditions, [plaintiff] consistently presented with no neurological deficits"; (2)

"There was one account in December 2013 of a new onset of numbness in the 4th and 5th

digits. . . .  Yet, on exam, . . . there was no neurological deficit apart from her subjective

report of decreased sensation"; and (3) "For the remaining relevant period in 2014, there

was evidence of uncontrolled blood sugar level, but neurologically, the claimant did not

exhibit signs of deficits" and she "denied neuropathy in the feet."  Tr. 21 (citing Tr. 406,

407, 409-10, 412, 416, 833, 839, 924)

Contrary to the ALJ's finding, the record indeed contains medical records

documenting neurological deficit.  In March 2014, plaintiff had positive Phalen's and

Tinel's tests and was, accordingly, diagnosed with carpal tunnel syndrome.[6]  Tr. 922.  The

---

[6] "Phalen maneuver" is "a maneuver in which the wrist is maintained in volar flexion; paresthesia occurring in the distribution of the median nerve within 60 seconds may indicate carpal tunnel syndrome.  Stedman's Medical Dictionary 526130 (2014).  "Paresthesia" is "[a] spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking); may be due to lesions of both the central and peripheral nervous systems."  *Id.* at 653800.

"Tinel sign" is "a sensation of tingling, or of 'pins and needles,' felt at the lesion site or more distally along the course of a nerve when the latter is percussed; indicates a partial lesion or early regeneration in the nerve."  *Id.* at 820740; *see also Dunlap v. Astrue*, No. CIV S-09-3446 EFB, 2011 WL 1135357, at *3 (E.D. Cal. Mar. 25, 2011) ("There are positive Phalen's and Tinel's signs on the left . . . .  [The physician] noted that plaintiff now had 'findings consistent with a left carpal tunnel syndrome.'").

ALJ, thus, mischaracterized the record pertaining to the neurological effects of plaintiff's conditions.  *See* Tr. 921-22.  Therefore, the ALJ's finding of no neurological impact was not a clear and convincing reason to discredit plaintiff's subjective symptom testimony regarding hand numbness.

In sum, the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective symptom testimony.

## II.    Medical Opinion Evidence

### A.    Dr. David Freed

Plaintiff argues that the ALJ should have given greater weight to the medical opinion of examining psychologist Dr. David Freed.  Pl. Br. 5-7.  The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies

---

"Carpal tunnel syndrome" is "the most common nerve entrapment syndrome, characterized by paresthesias, typically nocturnal, and sometimes sensory loss and wasting in the median nerve distribution in the hand . . . due to chronic entrapment of the median nerve at the wrist within the carpal tunnel."  Stedman's Medical Dictionary 877830 (2014).

between their opinions and other evidence in the record, or other factors the ALJ deems

material to resolving ambiguities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

601-02 (9th Cir. 1999).

Dr. Freed performed a psychological examination of plaintiff on September 16, 2015.

Tr. 382-89. Dr. Freed found that, "based on a review of records, client interview and testing,

[plaintiff's] functional limitations as described in this report reflect an average level of

functioning since July l, 2007." Tr. 382. Dr. Freed also reported a "Global Assessment of

Functioning" score of 55.[7] Tr. 386. As part of his assessment, Dr. Freed completed a

Functional Assessment Form, which indicated that plaintiff had moderate[8] difficulties in her

work related abilities to: understand and remember detailed instructions; carry out detailed

instructions; maintain attention and concentration for extended periods of time; perform

activities within a schedule and maintain regular attendance; sustain ordinary routine without

special supervision; make simple work-related decisions; complete a normal work week without

interruptions from psychologically based symptoms and perform at a consistent pace without an

---

[7] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall functioning level. It is rated with respect to psychological, social, and occupational functioning, without regard to functional impairments due to physical or environmental limitations. A score of 55 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders DSM IV-TR* 32, 34 (4th ed. 2000). The Global Assessment of Functioning scale has since been replaced by the WHO Disability Assessment Schedule. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders DSM-5* (Sept. 18, 2014) https://doi.org/10.1176/appi.books.9780890425596.Introduction.

[8] For purposes of the assessment, "moderate" means "able to perform designated task or function but has or will have noticeable difficulty (distracted from job activity) from 11-20 percent of the work day or work week (i.e. more than 1 hour per day but less than about 1 ½ hours per day)." Tr. 390.

unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independent of others.  Tr. 390-91.  To support these conclusions, Dr. Freed referred to his evaluation report and wrote that plaintiff suffers from uncontrolled diabetes, has a history of seizures, and has reported a history of multiple head injuries.  Tr. 391.

The ALJ rejected Dr. Freed's opinion on the basis that it was performed after the date last insured.  Tr. 19.  Notably, the ALJ did not specifically reference Dr. Freed's evaluation in his decision, stating only that: "As to other opinion evidence of record, the undersigned accords no weight as to statements regarding severity or degree of functioning that were based on exams and reports performed and given well after the date last insured."  Tr. 19 (citing Tr. 382-89).  The ALJ gave "great weight" to the medical opinion of testifying psychologist medical expert Dr. Glen Griffin, who opined that "there would be no work related mental limitations."  Tr. 18.  The ALJ also gave "great weight" to the State agency's reviewing psychological consultants Dr. Winifred Ju and Dr. Joshua Boyd because each of these experts' opinions was consistent with the evidence of record as a whole, i.e., that plaintiff "had no severe mental impairments prior to the date last insured."[9]  *Id.*

---

[9] These medical opinions were also issued after the date last insured.  The Commissioner contends that "[p]laintiff misinterprets the ALJ's reasoning. The ALJ rejected [Dr. Freed's] opinion because the *evaluation*, which the opinion relied upon, occurred after the date last insured."  Def. Br. 6 (emphasis in original).  This argument is unavailing because, as explained above, under *Smith*, all four expert opinions (Dr. Freed, Dr. Griffin, Dr. Boyd, and Dr. Ju) are relevant.

Plaintiff, citing *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), contends that the ALJ erred when he disregarded Dr. Freed's opinions on the basis that they were made after the date last insured.  Pl. Br. 6.  In *Lester*, the Ninth Circuit, relying on *Smith v. Bowen*, 849 F.2d 1222 (9th Cir. 1988), recognized that "this court has specifically held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'"  81 F.3d at 832; *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1228-29 (9th Cir. 2010) ("While the ALJ must consider only impairments (and limitations and restrictions therefrom) that Turner had prior to the [date last insured], evidence post-dating the [date last insured] is probative of Turner's pre-[date last insured] disability.").

In response, the Commissioner cites *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) and *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999), for the proposition that "opinions based on examinations performed after the date last insured can provide a valid basis to discount the opinion."  Def. Br. 6.  In *Macri*, the plaintiff argued "that the Appeals Council erred by deciding that [the treating physician's] reports submitted after the ALJ issued his decision did not warrant a remand to the ALJ."  93 F.3d at 544.  The court "disagre[ed] because [the treating physician's] reports were issued after the Commissioner's decision, so they are less persuasive" and "[t]hus, the Appeals Council did not err when it concluded that the ALJ's decision was not contradicted by the weight of the evidence."  *Id.*

As an initial matter, *Smith* and *Macri* do not conflict.  *Barker v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08136-PCT-DWL, 2019 WL 3718975, at *5 (D. Ariz. Aug. 7, 2019).  "*Smith* holds that an ALJ cannot entirely disregard a treating or examining physician's opinions merely because they were rendered retrospectively, while *Macri* holds that a

retrospective opinion is entitled to less weight than a contemporaneous one." *Id.*  "These two lines of reasoning are easy to synthesize—although there may be a thumb on the scale in favor of opinions flowing from contemporaneous exams, an ALJ still must carefully consider retrospectively-rendered opinions and can't disregard them based solely on when they were rendered." *Id.*; *cf. Nerurkar v. Astrue*, 2010 WL 2569157, No. C09–1541–RAJ–BAT, *5 n.4 (W.D. Wash. May 10, 2010) (explaining that *Macri* "did not state that the opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status is entitled to no weight at all").

The Commissioner analogizes this case to *Tidwell* because in both cases the evaluations took place over a year after the date last insured and the ALJ identified other contradictory medical evidence.  Def. Br. 6-7.  But this case is distinguishable from *Tidwell*. In *Tidwell*, the claimant "insist[ed] that the ALJ failed to fulfill his duty to develop the record and erred in rejecting the check-the-box form submitted by [a physician] that stated [the plaintiff] 'has been continuously unable to work' since 1992."  161 F.3d at 602.  At the claimant's hearing, the ALJ voiced his concerns to the claimant about the form, requested an additional inquiry into the basis for the physician's opinion, and explained that he would keep the record open so that it could be supplemented by responses from the physician.  *Id.*  The Ninth Circuit subsequently determined that the physician's responses were not convincing, supporting its conclusion with the fact that the physician did not examine claimant until more than a year after the expiration of her insured status and other contradictory medical evidence.  *Id.*

Unlike in *Tidwell*, the ALJ here did not voice concerns about and request additional inquiry into the basis of Dr. Freed's opinions.  Nor did he keep the record open awaiting Dr. Freed's supplementation and then decide that the supplementation was inadequate.  To the

contrary, as noted above, the ALJ did not mention *any* of Dr. Freed's specific findings or purport to explain why they are unworthy of credence. *See* Tr. 18-19. While the ALJ's use of the phrases "no weight" (Tr. 19) and "great weight" (Tr. 19) may *suggest* that he had concerns about Dr. Freed's opinion and therefore gave more weight to Dr. Griffin, Dr. Boyd, and Dr. Ju's opinions because their opinions are in line with the other evidence, the ALJ did not proffer this as a reason. Tr. 18.

In sum, *Smith* makes it impermissible to reject medical opinions based solely on the fact they were rendered after the date last insured. *Compare Hines v. Berryhill*, No. C17-579 JCC, 2018 WL 817889, at *3 (W.D. Wash. Feb. 12, 2018) ("[T]he ALJ may not [disregard a post-date-last-insured opinion] . . . without any analysis whatsoever."), *with Turner*, 613 F.3d at 1224 (The ALJ is permitted to disregard an opinion formulated outside of the relevant time period, if sufficient reasons are given.). Temporality is the sole reason proffered by this ALJ for discounting Dr. Freed's opinions. As a result, the ALJ failed to provide legally sufficient reasons for discounting Dr. Freed's medical opinion and, therefore, improperly discounted Dr. Freed's testimony.

### B.     Maria Fife, FNP

Plaintiff argues that the ALJ failed to properly evaluate treating FNP Maria Fife's opinions regarding plaintiff's functional capacities. Pl. Br. 7-10.

As a certified nurse practitioner, FNP Fife is a medical source, but is not considered an "acceptable medical source" under the Act; accordingly, the applicable legal standard is the equivalent of a lay witness, or "other source." *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); SSR 06-03P, 2006 WL 2329939 at *3 (Aug. 9, 2006). Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's

ability to work is competent evidence that an ALJ must take into account.  *Nguyen v.*

*Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  To reject such testimony, an ALJ must

provide "reasons germane to each witness."  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.

2001) (citations omitted).  "Further, the reasons 'germane to each witness' must be

specific."  *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout v. Comm'r,*

*Social Sec. Admin*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

### 1.    Functional Assessments

On April 17, 2018, FNP Fife filled out "Functional Assessment of Work-Related

Physical Activities" and "Functional Assessment of Work-Related Mental Activities" forms.

Tr. 1368-71, 1373-74.

As to plaintiff's mental functional limitations, FNP Fife opined that plaintiff had the

following moderate[10] limitations: maintaining attention and concentration for extended periods

of time; performing activities within a schedule; sustaining ordinary routine without special

supervision; performing at a consistent pace without an unreasonable number and length of rest

periods; asking simple questions or requesting assistance; getting along with coworkers or peers

without distracting them or exhibiting behavioral extremes; maintaining socially appropriate

behavior; and setting realistic goals or making plans independent of others.  Tr. 1373-74.  FNP

Fife indicated that plaintiff had the following moderately severe[11] impairments: completing a

normal work day and work week without interruption from psychological symptoms; interacting

appropriately with the general public; accepting instructions and responding appropriately to

---

[10] "Moderate" is defined above.  *See supra* Sect. II.A.n.9.

[11] According to the form, "moderately severe" means" able to perform designated task or
function but has or will have noticeable difficulty (distracted for job activity) more than 20
percent of the work day or work week (i.e., more than 1 ½ hours per day)."  Tr. 1373.

17 – OPINION AND ORDER

criticism from supervisors; responding appropriately to changes in the work setting; and

travelling in unfamiliar places or using public transportation. *Id.*

As to plaintiff's physical functional impairments, FNP Fife opined that plaintiff requires

5-10 minute breaks once an hour (in addition to normal breaks); was likely to miss work more

than two days per month; can stand/walk for at least two hours in a an eight hour day; can rarely

lift and/or carry 20 pounds; and can occasionally and frequently lift/carry 10 pounds. Tr. 1368-

69. FNP Fife opined that plaintiff's medical and clinical findings of "chronic back pain and

neuralgia related to type 1 diabetes" support her assessment of plaintiff's physical limitations.

Tr. 1370.

On April 25, 2018, plaintiff's counsel sent FNP Fife a letter with the following

question:

> For Social Security Disability Insurance Benefits purposes, [plaintiff] is only
> insured until June 30, 2014. In that regard and to a reasonable medical
> probability, would the limitations, as you have set out in your completed
> functional assessment, be reflective of [plaintiff's] expected limitations on or
> before June 30, 2014?

Tr. 1376. FNP Fife answered, "Yes." *Id.*

### 2.    ALJ's Decision

The ALJ gave "no weight" to FNP Fife's assessments. Tr. 19, 22. First, the ALJ rejected

FNP Fife's opinion on the basis that it was given well after the relevant time period. *Id.*

However, when there is no evidence of a change in claimant's condition, a lay witness's

statement regarding a claimant's ability to work is relevant, even if given after the relevant

period. *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) ("["The lay witness]'s statement that

[the claimant] was incapable of working in 2001 is relevant to [the claimant's] ability to work in

1999, at least in the absence of any evidence that [the claimant]'s condition worsened between 1999 and 2001.").

Here, the medical evidence of record indicates that plaintiff's A1C percentages remained about the same between the relevant time period and when Fife rendered her opinion.  Tr. 406 (10.2% on November 8, 2013); Tr. 909 (10.4% on December 20, 2013); Tr. 399, 502 (9.7% on August 6, 2014); Tr. 1253, 1327 (10% on November 3, 2017).  Thus, the record demonstrates that plaintiff's condition—uncontrolled diabetes—was relatively consistent from the relevant period until the time of FNP Fife's assessments.[12]  It follows, then, that the limitations set forth by FNP Fife would apply to the period prior to the date last insured, and, accordingly, the timing of FNP Fife's opinion is not a specific and germane reason to discount her assessment of plaintiff's limitations.

Second, the ALJ discounted FNP Fife's opinions because "she check-marked her concurrence that the limits she set out in a 2018 functional assessment would be expected to be the claimant's limitations on or before the date last insured," i.e., she provided "no explanation" for her check-the-box opinion.  Tr. 19, 22.  Courts have stated that a source "should not be faulted for failing to provide details . . . that [she] was not asked to provide."  *See Holmes v. Berryhill*, No. CV-17-03360-PHX-DGC, 2018 WL 5807081, at *3 (D. Ariz. Nov. 6, 2018) (explaining that the check-the-box opinions provided by an "other source" could not be discounted for lack of "lengthy explanations") (citation omitted).  "Instead, the ALJ should consider the conclusions in light of the 'other source's' treatment records with the Plaintiff." *Holmes*, 2018 WL 5807081, at *3 (citing *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir.

_____

[12] Plaintiff's A1C percentages were similar prior to the relevant period.  Tr. 406 (11.8% in January 2013); Tr. 428 (12.1% on November 13, 2012); Tr. 784 (12.1% on May 3, 2012); Tr. 751 (10.3% on February 8, 2012); Tr. 724 (10.1% in December 2010).

2017)); *see also Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) (that the nurse practitioner examined the claimant ten times over two years is a strong reason to assign weight to her opinion). Here, FNP Fife checked a box indicating that her assessments applied to the period before the date last insured. Tr. 1376. The form did not require an explanation, and, therefore, FNP Fife cannot be faulted for failing to provide details as to why her opinion applied prior to the date last insured.

Third, the ALJ discounted FNP Fife's assessments of plaintiff's limitations for being inconsistent with the other evidence in the record through the date last insured. Tr. 18-19, 22. Inconsistency with medical evidence is a germane reason for discrediting testimony of a lay witness. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted).

Regarding plaintiff's mental impairments, the ALJ's decision states that "[FNP Fife's] more than mild ratings . . . are inconsistent with the evidence of record through the date last insured[.]" Tr. 19. The ALJ cites medical evidence regarding each of the four areas of mental functioning, i.e., "paragraph B" criteria, as well as the opinions of three medical experts (examining physician, Dr. Griffin, and two State agency reviewing consultants, Dr. Ju and Dr. Boyd) as evidence. Tr. 18-19. These are specific, germane reasons. *See, e.g.*, *Putnam v. Colvin*, 586 F. App'x 691, 693 (9th Cir. 2014) (ALJ provided germane reason to reject "other source" opinion where it was inconsistent with the findings of four acceptable medical sources); *De Herrera v. Astrue*, 372 F. App'x 771, 773 (9th Cir. 2010) (ALJ provided germane reasons to reject nurse practitioner's opinion that was rejected by two reviewing physicians and that ran contrary to the weight of the evidence). Thus, the ALJ adequately explained why he gave no weight to FNP Fife's "more than mild" assessments of plaintiff's mental limitations.

As to physical impairments, the ALJ stated that

> [FNP Fife] indicated restriction to sedentary work, but that [plaintiff] would not be able to sustain such work activity. . . . [E]xams during the relevant period do not support such severity. As Dr. Blackman's persuasive medical expert testimony indicated, claimant had no motor component on exam, no recurrent neuropathy.

Tr. 22. However, the ALJ's conclusion that Dr. Blackman's testimony is inconsistent with FNP Fife's opinions is not borne out by the record. When asked whether "the file support[s] the severity of [FNP Fife's] functional capacity assessments[,]" Dr. Blackman responded: "I believe that the file does support . . . [that] most of the restrictions, limitations in her functional capacity . . . are reasonable." Tr. 41-42. Also, Dr. Blackman expressed no opinions on plaintiff's limitations concerning absenteeism or sustainability. *See generally* Tr. 36-48 (Dr. Blackman's testimony). In sum, Dr. Blackman did not assess all of the same limitations that FNP Fife did, and Dr. Blackman agreed with FNP Fife's assessment of plaintiff's limitations. Accordingly, the ALJ's conclusion that FNP Fife's assessments were inconsistent with Dr. Blackman's testimony is not supported by the record and is not a specific, germane reason to discount FNP Fife's testimony.

Thus, the ALJ provided sufficiently germane reasons for discounting FNP Fife's opinion concerning plaintiff's psychological impairments but failed to do so with respect to Fife's assessment of plaintiff's physical limitations. An ALJ may not discount the entirety of an other source's medical opinion when the ALJ has divided the opinion into distinct parts and only one of those parts is inconsistent with objective evidence in the record. *See Dale*, 823 F.3d at 945 (holding that "an ALJ errs when he discounts another source's *entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent") (emphasis in

original).  Therefore, the ALJ erred by discounting the entirety of FNP Fife's assessments because of an inconsistency with the evidence of record.

## III.    Erroneous RFC

Plaintiff assigns error to the ALJ's RFC formulation because it failed to include all limitations that were supported by the record.  Pl. Br. 15-16.  The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all of the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant.  *Id.*; SSR 96–8p *available at* 1996 WL 374184.  In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations.  *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  Only those limitations which are supported by substantial evidence must be incorporated into the RFC.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Because the ALJ erred at step two and failed to properly credit plaintiff's subjective symptom testimony and the opinions of Dr. Freed and FNP Fife, the ALJ failed to fashion an RFC that accurately reflects plaintiff's limitations.

## IV.    Remand

When a court determines the Commissioner committed harmful error in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing."  *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)).  In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are

met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ failed to properly evaluate plaintiff's subjective symptom testimony and the medical opinions of Dr. Freed and FNP Fife.

However, the second requisite is not met, as the record in this case is not fully developed. Where the ALJ failed to properly consider the opinions of Dr. Free and FNP Fife, remand is the most appropriate remedy. *See Treichler*, 775 F3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."); *Berrios v. Berryhill*, No. 8:16-CV-02272-GJS, 2018 WL 1054308, at *3 (C.D. Cal. Feb. 23, 2018) ("[B]ecause the ALJ did not even mention Dr. Ursino's opinions, questions regarding the extent to which Plaintiff's symptoms limit his ability to work remain unresolved."). "There may be evidence in the record to which the ALJ can point to provide the requisite specific and legitimate reasons for disregarding the opinions of [Dr. Freed and FNP Fife]. Then again, there may not. In any event, the ALJ is in a better position than this court to perform the task." *Crumly v. Astrue*, No. CV-08-674-TUC-RCC, 2010 WL 3023349, at *22 (D. Ariz. June 15, 2010), *report and recommendation adopted,* 2010 WL 3023339 (D. Ariz. July 30, 2010). Moreover, even if the improperly rejected opinions are

credited as true, it is not clear that the ALJ would be required to find plaintiff disabled because the VE did not provide an opinion as to whether plaintiff would be able to perform jobs that exist in significant numbers in the national economy when taking into account all of plaintiff's limitations.

On remand, the ALJ must (1) accept plaintiff's testimony or provide legally sufficient reasons for rejecting it, (2) accept the opinions of Dr. Freed and FNP Fife or provide legally sufficient reasons for rejecting them, (3) obtain additional VE testimony regarding what work plaintiff can do, if any, and (4) conduct any additional proceedings as indicated by the results of the foregoing.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED August 5, 2020.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge